CHARLES MITSCH ET AL., APPELLANTS, v. TOWNSHIP OF
RIVERSIDE ET AL., RESPONDENTS.

Argued June 30, 1914—Decided November 16, 1914.

1. The power to sell land for taxes is a naked power, and the validity of the title derived from such a sale depends upon a strict compliance with the directions of the statute. The purchaser must show affirmatively that everything has been done which the statute makes essential to the due execution of the power. *Woodbridge* v. *State, Allen, prosecutor*, 43 *N. J. L.* 262, followed.

2. Without a valid assessment, all proceedings to sell lands for taxes are a mere nullity.

3. Under the Tax act one of the requisites of a valid assessment is notice to the owner, and although the statute provides that no proceedings for collection shall be invalid for lack of the notice or demand, this was meant only to prevent the failure of a tax lien in cases where the collector could not readily make the demand; it is not applicable in a case where the owner is well known to the collector, lives in the same town, was supposed to have been already assessed, and to have paid taxes on the property regularly for three years immediately preceding.

4. Where the collector of taxes under authority of section 28 of the act undertakes to assess land as omitted property, he must give the owner immediate notice of the entry of the assessment upon the duplicate, and of the time and place of the next meeting of the county tax board.

5. Upon a *certiorari* to review the proceedings on which a tax title is founded, where the facts necessary to show the validity of the sale do not appear by the proceedings returned with the writ, they must be shown by the recitals in the certificate of sale or by proof *aliunde*.

6. Where a writ of *certiorari* to review proceedings on which a tax title is founded calls for all documents and proceedings, the return must be taken to contain a full statement of all the proceedings that were had.

7. Upon a *certiorari* to review proceedings on which a tax title is founded, where there is nothing in the certificate or return to show that the tax was unpaid, that there were proceedings to perfect a lien by filing with the county clerk as required by section 50 of the statute, that the tax was in arrear on the ensuing first day of July as required by section 51, that public notice was given of the time and place of sale, or that advertisement was made in newspapers or by posting in five public places, and where it also appears affirmatively that no notice of the sale was given to the owner, and there was a failure to

file a report of sale with the clerk of the taxing district as required by section 54, the proceedings must be set aside.

8. A purchaser at a tax sale gave notice to redeem to the owner; the owner by his attorney sent the collector of taxes a check for the amount of tax and costs and within a few cents of the amount of the interest; the collector refused to receive payment, solely on the ground that the offer to redeem was by a stranger to the title. *Held*, that it is not important that the tax was not tendered in cash or that there may have been an error of a few cents in calculating the interest, since a formal tender would have been idle.

9. Where no objection was made at the argument in the Supreme Court that a writ of *certiorari* was allowed after the time limited by section 14 of the *Certiorari* act, the Court of Errors .and Appeals ought not to consider the objection since the limitation is not applicable where the assessment of taxes has been made in violation of constitutional rights, and the court cannot know what facts might have been brought to the attention of the Supreme Court if the point had been made there.

On error to the Supreme Court.

The respondent Schele brought ejectment against the appellants, claiming under a tax sale. Thereupon the appellants sued out a *certiorari* in aid of their defence for the purpose of setting aside the tax sale. The property formerly belonged to Barrows, who conveyed to Mitsch by deed dated May 28th, 1904, and recorded May 31st, 1904. Mitsch had taken possession of the land and built an office and scales thereon which were used in connection with and as part of a lumber yard. On December 12th, 1908, there was recorded a deed for the same property from Barrows to Schuster, dated and acknowledged August 18th, 1894. (The date 1904 as given in the certified copy is clear copyist's error.) Mitsch had been regularly assessed for taxes on property described as "lumber yard," which was supposed by him and by the assessor and collector to include the lots now in question. In 1908, after the assessor had completed the duplicate and it had reached the collector, the latter officer was asked by someone to assess the lots. He did so, assessing them in the name of Schuster. Of this Mitsch had no notice, but paid his taxes on the "lumber yard" as before. The taxes assessed to Schuster

were unpaid and a tax sale was had in 1909 for the Schuster taxes; under this sale Schele claims. Mitsch had no notice of the sale. In 1911 he was notified by Schele to redeem. He employed Barrows as his attorney. Barrows sent Schele a check for the tax (which was less than ten dollars, including interest and costs). Schele refused to receive it. Thereupon Barrows sent a check to the collector who refused to receive it upon the ground that Mitsch was a stranger and had no right to redeem. No other ground was stated. The collector wrote that Schuster was considered the rightful owner. He evidently thought that Schuster alone had the right to redeem. Who Schuster was did not appear. It was proved by Barrows, who was uncontradicted, that the deed under which Schuster is supposed to claim had been executed by him, probably in blank, and put in the hands of one Rhoads who said he had a prospective buyer; that afterwards Rhoads informed Barrows that the man had failed to take the deed, which was then lost

For the appellants, *V. Claude Palmer.*

For the respondents, *James M. Davis (Davis & Davis).*

The opinion of the court was delivered by

SWAYZE, J. If it were necessary we could not avoid holding upon the case as presented that there was no proof that the deed to Schuster had ever been legally delivered. It is not necessary to go as far as that. Assuming in favor of the respondents that it was delivered, the failure to record it until after Mitsch had recorded his deed is fatal to the alleged Schuster title. There is no question that Mitsch was a *bona fide* purchaser for a valuable consideration not having notice thereof. As to him, the statute makes the Schuster deed void and of no effect. *Comp. Stat.,* p. 1553, *pl.* 54. The law was not different in 1894. *Gen. Stat.,* p. 882, *pl.* 145. There can be no question that Mitsch's deed conveys the lots; the boundaries as stated therein plainly cover them; the fact is confirmed by the testimony of the grantor and of the surveyor,

and was, in effect, acknowledged by Schele when he served a notice calling upon Mitsch to redeem. The fact that Mitsch's deed included the lots was not disputed; the controversy was only whether they were included in the assessment of the "lumber yard" by these words alone. This was an immaterial issue, since the proceedings are otherwise fatally defective.

"The power to sell lands for taxes is a naked power, and the validity of the title derived from such a sale depends upon a strict compliance with the directions of the statute. The *onus probandi* is upon the purchaser at such a sale, and he must show affirmatively that everything had been done which the statute makes essential to the due execution of the power." *Woodbridge* v. *State, Allen, prosecutor,* 43 *N. J. L.* 262. The first and most important essential is a valid assessment. Without that, all the proceedings are a mere nullity. Under our statute one of the requisites of a valid assessment is notice of some kind to the owner. The collector is required, by section 42 of the Tax act, within sixty days after the receipt of the tax duplicate, to demand payment of the tax from each taxpayer in person or by notice left at his residence or mailed postage prepaid to the taxpayer if his post-office address is known to the collector. Although this section of the statute provides that no proceedings for collection shall be invalid for lack of the notice or demand, it is obvious that this saving clause was meant only to prevent the failure of a tax lien in cases where the collector could not readily make the demand. In a case like the present, where it is shown that the owner was well known to him, lived in the same town, and was supposed at least to have been already assessed and to have paid taxes on the property regularly for three years immediately preceding, there can be no excuse for the failure to give notice and demand payment of the tax as the statute requires, except the fact that, as is now said, the property was not included by the assessor in the assessment of the "lumber yard." This, however, does not excuse the collector. He himself undertook to assess the lots as omitted property under the authority given to him by section 28 of the Tax act. *Comp.*

*Stat., p.* 5107, *pl.* 28. That section requires him to give the owner immediate notice of the entry of the assessment on the duplicate and of the time and place of the next meeting of the commissioners of appeal. There is no saving clause in this section as in section 42, and the decisions do not suggest a qualification of the necessity of notice except in the case of non-residents where actual service is impossible. The decisions, it is true, were not in cases of omitted property added by the collector under section 1 of the act of 1848 (*Gen. Stat., p.* 3290, *pl.* 56), but in cases of property added or assessed at a higher valuation by the commissioners of appeal under section 2 of the act (*Id., pl.* 57); but the revisers, in 1903, by combining the two sections in the present section 28, must have meant that the same rule was applicable to each case, and by omitting to introduce in section 28 the saving clause of section 42, sufficiently indicated that the requirement of notice under the former section was more stringent than under the latter. There is a valid reason for making it more stringent. The taxpayer may be assumed to know that his property is liable to tax and be held to the duty of ascertaining whether it has been assessed by the assessor; but he may on his part assume that the general short description, which the assessor is authorized to adopt, includes all his property liable to assessment, especially since he may properly assume that the assessor has performed his public duty to assess all property liable to taxation. On the other hand when, as in this case, it is claimed that a part of the property has been omitted by the assessor, the taxpayer is entitled to know what the claim of the collector is, so that he may take proper proceedings to present the facts before the appellate tribunal provided by statute. In this case there was a failure to give notice to Mitsch, the owner, and his interest in the lots could not be affected by the subsequent proceedings. When, therefore, the collector attempted by a sale and the certificate thereof to affect Mitsch's title, the latter had a right to question the proceedings by *certiorari*. Mitsch's title is that of owner in fee and the certificate of sale is nugatory for want of a legal assessment on which to rest. If it be said

that the collector cannot be supposed to decide between conflicting titles, it is sufficient answer to say that he cannot sell the property except upon proceedings against the owner, and if he desires to avoid the risk of losing the tax, he must notify all parties who seem to have a title. If this were not required, an owner of land would be placed in the unfortunate position in which Mitsch finds himself. Without notice of a tax, without any reason to expect any tax other than that levied by the assessor, after paying all that he ought to have anticipated it was his duty to pay, and without being afforded an opportunity to contest or even to pay the additional tax demanded, he finds himself deprived of property which he has been at an expense to improve for business purposes. The legislature never contemplated so gross an injustice, and in order to prevent it, has required the notice that was not given in this case.

These considerations are enough to dispose of the case. It is probably well, however, to call attention to other errors equally fatal. Woodbridge *v.* Allen, above cited, holds that on the hearing of a *certiorari* brought to review the proceedings on which a tax title is founded, the common law rule applies that one who claims under a tax sale must show, affirmatively, that the tax was duly assessed, and was a lien on the lands, and that the successive steps which led to the sale were regularly taken. Such facts, if they do not appear by the proceedings returned with the writ, must be shown by the recitals in the certificate of sale or by proof *aliunde*. It was also held in that case that where the writ of *certiorari* calls for all documents and proceedings, the return must be taken to contain a full statement of all the proceedings that were had. The court was there dealing with the effect of section 15 of the Sale of Land act. *Comp. Stat., p.* 4679. The provisions of the present act are no stronger than that. The certificate of sale is only presumptive evidence of the title of the purchaser and of the regularity and validity of the proceedings. *Comp. Stat., p.* 5135, *pl.* 56, at the end. When we examine the return and the certificate in this case we find a very complete failure to set forth what the statute requires.

The certificate, indeed, contains some of the recitals required to be contained therein, but on a direct attack by *certiorari* this does not suffice under the rule of Woodbridge *v.* Allen, and there is no proof *aliunde.* The defects are serious. There is nothing in the certificate or return to show that the tax was unpaid unless we guess it from a recital of the assessment and the sale; nothing to show proceedings to perfect a lien by filing with the county clerk as required by section 50; indeed, the return says, and the township clerk testifies, that there was no list of delinquent taxpayers for 1908. There is nothing to show that the tax was in arrear on July 1st, 1909, as required by section 51; or that public notice was given of the time and place of sale, stating the names of delinquents and the land to be sold, and the amount of the delinquent taxes; or that advertisement was made in newspapers or by posting in five public places. The collector was a witness but did not testify on this subject. If we could assume that these facts were not litigated, we could not in the same way overcome the failure to give notice of the sale to the owner, for there is uncontradicted evidence that no such notice was given. As if the failure to comply with section 51 was not fatal enough, there was a failure, at least as far as appears, to comply with section 54, by filing a report with the clerk of the taxing district of the collector's proceedings with proof of publication, posting and mailing. The clerk was called as a witness, but was not questioned on this topic. It would be difficult to find a proceeding more erroneous. The defects are not merely of formal or technical procedure; they go to the substantial merits. Even when it came to the redemption of the property from the sale, Mitsch was given no chance to redeem. Although Schele, the purchaser, served a notice calling upon him to redeem, the collector refused him the right solely on the ground that he was a stranger to the title, thus assuming to pass on a legal question and deciding it wrong. It is not important that the tax was not tendered in cash or that there may have been an error of a few cents in calculating the interest—the refusal to accept the payment

was not put on either of these grounds, and it would have been idle to make a further and more formal tender.

After the argument in this court a point was made by supplemental brief, that was not presented in the court below. It is said that the writ of *certiorari* was allowed too late, and section 14 of the *Certiorari* act is appealed to. Since the point was not made in the Supreme Court, we need not consider it now. We ought not to do so since the limitation is not applicable in cases where the assesment is made in violation of constitutional rights. (Cases have been recently collected by Mr. Justice Trenchard in *Walsh* v. *Newark*, 78 *N. J. L.* 168.) We do not know what facts might have been brought to the attention of the Supreme Court, if this point had been made there.

The judgment must be reversed, and the record remitted to the Supreme Court in order that a judgment may be there entered setting aside the proceedings. Since the tax was illegally assessed, and our decision disposes of the whole case, the appellant is entitled to costs in both courts.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, BERGEN, KALISCH, BLACK, BOGERT, VREEDENBURGH HEPPENHEIMER, WILLIAMS, JJ. 10.