841 A.2d 430 (2004)
366 N.J. Super. 323
CAPUT MORTUUM, L.L.C., a New Jersey Limited Liability Company, Plaintiff-Respondent,
v.
S & S CROWN SERVICES, LTD.; Crown DN & T Partnership; Norman Berman; Alan Simons, Defendants-Appellants, and
Stephen Gordon and Dale Gordon his wife; Rochelle Gordon n/k/a Rochelle Rubin; State of New Jersey; The Mews at Chanticleer Condominium Association, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2003.
Decided February 2, 2004.
*433 Mary J. Pederson argued the cause for appellants (Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, attorneys; Ethan N. Halberstadt and Ms. Pederson, on the brief).
Adam Greenberg, Voorhees, argued the cause for respondents (Honig & Greenberg, attorneys; Mr. Greenberg, on the brief).
Before Judges AXELRAD, WINKELSTEIN, and LARIO. *431
*432 The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
This appeal presents the novel issue of whether an executing judgment creditor has the right to redeem a certificate of sale for unpaid municipal liens under N.J.S.A. 54:5-54, issued against its debtor's real estate and purchased by another entity. In a cogent written opinion, Judge Theodore Z. Davis found no such right to exist, based upon the legislative imperative expressed in the statutory amendment; the public policy of prioritizing municipal liens and encouraging tax sale foreclosure to assist municipalities in collecting delinquent taxes; and the judgment creditor's failure to either purchase the certificate from the municipality or by assignment from the certificate holder. The judge also rejected the judgment creditor's entitlement to redemption under the doctrine of equitable subrogation. He granted summary judgment in favor of the tax sale certificate holder, the effect of which was to preclude redemption by the creditor and to allow the foreclosure action to proceed. We affirm.

I.
There are no facts in dispute. In 1990, defendant, Stephen Gordon, purchased a residence located at 116 St. Vincent Court in Cherry Hill ("the property"). In 1997, defendants, S & S Crown Services, Ltd., Crown DN & T Partnership, Norman Berman, and Alan Simons (collectively referred to as "Crown"), obtained a judgment in Pennsylvania in excess of one million dollars against Gordon and domesticated it in New Jersey. Crown attempted to execute on its judgment but was unsuccessful because of several fraudulent transfers of Gordon's Cherry Hill property. On July 24, 1999, Crown filed suit in the United States District Court for the District of New Jersey, seeking to set aside the series of transfers of the property as fraudulent. In August 2000, Crown prevailed and title was revested in Gordon's name. A sheriff's sale was scheduled for May 4, 2001, but was postponed on several occasions by virtue of the filing of litigation by Gordon's wife asserting a spousal interest in the property, and a bankruptcy by Gordon. As a condition of the stay of execution, the court required Gordon's wife to post a $25,000 bond, which, at Crown's request, was increased by an additional $91,400.10.
*434 In the interim, on June 29, 1999, the Garden State Investment Group purchased tax sale certificate # 99-538 for unpaid municipal taxes on the property from Cherry Hill Township ("the Township") at a public sale, N.J.S.A. 54:5-19, and recorded it on July 21, 1999. The tax sale certificate was assigned on November 14, 2001 to Robert Stein, and on December 11, 2001, it was further assigned to plaintiff, Caput Mortuum, L.L.C. (CM). CM continued to pay taxes on the property. Crown neither bid on the certificate at the public sale nor attempted to obtain an assignment of the certificate in the intervening two and one-half years before its purchase by CM.
In December 2001, following the two-year waiting period required by N.J.S.A. 54:5-86, CM filed an in personam tax foreclosure complaint seeking to bar and foreclose all equity of redemption in the property. CM joined as defendants Gordon and his wife, a mortgagee, and, although not required to do so under N.J.S.A. 54:5-54, various judgment creditors of Gordon, including Crown. Crown did not dispute CM's entitlement to pursue its right to foreclose; rather, it claimed an entitlement to redeem the certificate as an equitable owner or under the doctrine of equitable subrogation. Judge Davis disagreed, and on July 9, 2002, entered summary judgment in CM's favor. The order was interlocutory, and the matter is before us by leave granted. R. 2:2-3(b).
Subsequent to the filing of this appeal, the Bankruptcy Court granted relief from the automatic stay and Crown obtained summary judgment in its favor in the action brought by Gordon's wife. We were advised at oral argument that during the pendency of this appeal, and before CM completed its tax foreclosure action, Crown successfully executed on its judgment and obtained title to the property. Crown, now in the status of owner of the property, acquired the undisputed right to redeem the tax sale certificate. N.J.S.A. 54:5-54.
A case is moot if the disputed issue has been resolved, at least with respect to the parties who instituted the litigation. De Vesa v. Dorsey, 134 N.J. 420, 428, 634 A.2d 493 (1993) (Pollock, J., concurring); Oxfeld v. New Jersey State Bd. of Educ., 68 N.J. 301, 303-04, 344 A.2d 769 (1975). Whether Crown, in its former status as a judgment creditor, had the right to redeem, is no longer an issue in this litigation. Therefore, the issue resolved by the order under appeal is moot.
Ordinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract. Oxfeld, supra, 68 N.J. at 303-04, 344 A.2d 769. Moot or academic appeals are generally dismissed. Cinque v. New Jersey Dep't of Corr., 261 N.J.Super. 242, 243, 618 A.2d 868 (App.Div.1993). Our courts generally will not decide a case if the issues are hypothetical, a judgment cannot grant effective relief, or there is no concrete adversity of interest between the parties. Advance Elec. Co. v. Montgomery Township Bd. of Educ., 351 N.J.Super. 160, 166, 797 A.2d 216 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002); Anderson v. Sills, 143 N.J.Super. 432, 437, 363 A.2d 381 (Ch.Div.1976).
On occasion, however, we will decide such appeals where the underlying issue is one of substantial importance and is capable of repetition while evading review. See, e.g., Joye v. Hunterdon Cent. Reg'l High School Bd. of Educ., 176 N.J. 568, 583, 826 A.2d 624 (2003); Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330, 676 A.2d 1065 (1996); In re Conroy, 98 N.J. 321, 342, 486 A.2d 1209 (1985); Guttenberg Sav. & Loan Ass'n v. Rivera, 85 N.J. 617, 622-23, 428 A.2d 1289 (1981).
*435 Both parties have urged us to address the issue raised in this appeal because it is of such compelling public importance to the lending and title abstract communities, municipalities, and others. They argue the issue presented here is a recurring one and justifies review at this time. We agree. There is little doubt that this case involves an important issue of statutory construction. Moreover, we are satisfied that controversies similar to this one will present themselves in the future and may well evade appellate disposition. Accordingly, we elect to decide the case on its merits.

II.
Prior to 1994, in addition to an owner, holder of an outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal liens, any "other person having an interest in land sold for municipal liens" was entitled to redeem a tax sale certificate. N.J.S.A. 54:5-54. Crown's judgment lien interest would have clearly qualified under the catchall designation, and CM's ability to foreclose its tax sale certificate could have been disturbed by Crown's right of redemption. However, in 1994, the Legislature deleted the phrase "other person having an interest in [land]" from N.J.S.A. 54:5-54, and amended the statute to its present form:
Except as hereinafter provided, the owner, his heirs, holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal taxes, assessment for benefits ... or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner in this chapter set forth, by paying to the collector... the amount required for redemption as hereinafter set forth.
[L. 1994, c. 32, § 8, eff. May 12, 1994.]
The plain language of the statutory amendment demonstrates a clear legislative intent to eliminate the rights of those persons who did not have a sufficient interest in the property to warrant extension of the right of redemption to them in favor of more protection for the owner of the property, as well as the holder of the certificate. This is reflected in the legislative history:
[N.J.S.A.] 54:5-54 is amended to limit persons who may redeem land sold for municipal taxes to the owner, heirs of the owner, mortgagees, holders of outstanding tax sale certificates, or occupant of the land. Under current law any person having an interest in the land, which could include such persons as bail bondsmen, can redeem a property implying that such persons must also be given notice of the proceedings.
[Assemb. Local Gov't Comm. Statement to Assemb., No. 936 (January 24, 1994).]
Whether the Legislature was motivated by a desire to reduce the number of persons who may claim an interest in the land or merely to reduce the notice requirements of the foreclosing certificate holder, both of which Judge Davis deemed were inferable from the limited legislative history of the amendment, the clear legislative intent was to narrow the category of persons entitled to redeem a tax sale certificate.
A judgment lien is a creature of statute. Gibau v. Klein, 329 N.J.Super. 227, 231, 747 A.2d 316 (App.Div.), certif. denied, 165 N.J. 486, 758 A.2d 646 (2000). Thus, Crown's interest as a judgment creditor can only be as effective as that which the Legislature has afforded it by statutory grant. Brescher v. Gern, Dunetz, Davison & Weinstein, P.C., 245 N.J.Super. 365, 368, 585 A.2d 961 (App. Div.1991). The right to redeem land from a tax sale is also statutory in origin, and the rights arising from it are fixed and *436 determined by the statute. Brewer v. Porch, 53 N.J. 167, 173, 249 A.2d 388 (1969); Lonsk v. Pennefather, 168 N.J.Super. 178, 182, 402 A.2d 259 (App.Div.1979), certif. denied, 82 N.J. 285, 412 A.2d 792 (1980).
When called upon to interpret a statute, the "overriding goal has consistently been to determine the Legislature's intent." Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995); E. Dickerson & Son, Inc. v. Ernst & Young, L.L.P., 361 N.J.Super. 362, 366-67, 825 A.2d 585 (App.Div.), certif. granted, 178 N.J. 249, 837 A.2d 1092 (2003). The first step in determining the Legislature's intent is to look at the plain language of the statute. Hubbard v. Reed, 168 N.J. 387, 392, 774 A.2d 495 (2001) (citations omitted). It is a well known rule of statutory construction that where a statute is clear and free from ambiguity on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning. V.C. v. M.J.B., 163 N.J. 200, 217, 748 A.2d 539, cert. denied, 531 U.S. 926, 121 S.Ct. 302, 148 L. Ed.2d 243 (2000); Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613, 725 A.2d 1104 (1999). A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by the plain language, given its ordinary and well understood meaning. O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002); Cornblatt v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998).
The 1994 amendment to N.J.S.A. 54:5-54 deleted the phrase "other person having an interest in [land]" and clearly delineated on its face who is entitled to redeem a tax sale certificate. The amendment provides an exclusive statutory right to redeem a tax sale certificate to an enumerated group, which does not include judgment creditors. Presumably, the Legislature determined that a judgment creditor has adequate other remedies, such as purchasing the land at its judgment execution sale and acquiring the status of an owner, as occurred during the pendency of this appeal.
Nor are judgment creditors implicitly included under the aegis of mortgagee. It is clear from the plain language and meaning of the amendment that the Legislature restricted the statutory right to redeem land in a foreclosure proceeding to specific persons or entities who have a direct interest in the property being sold for municipal liens and excluded all others. It is intuitive that this would include an owner, his heirs, and an occupant of the property. It is also logical to include the holder of a prior tax sale certificate, as real estate taxes are only a lien on the land assessed and are not the personal obligation of the owner, S & R Assocs. v. Lynn Realty Corp., 338 N.J.Super. 350, 360, 769 A.2d 413 (App.Div.2001); City of Newark v. Cent. and Lafayette Realty Co., 150 N.J.Super. 18, 21, 374 A.2d 504 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 508 (1977), and a mortgagee, who has a contractual security interest in the property but no claim against the person absent a note or other personal obligation, Chemical Bank New Jersey, N.A. v. City of Absecon, 13 N.J. Tax 1, 8 (1992); 29 New Jersey Practice, Law of Mortgages §§ 3.1, 4.1, 4.2, at 60, 196-210 (Myron C. Weinstein) (2d ed.2001). On the other hand, a judgment creditor obtains a personal judgment, which it may satisfy in a number of ways, including the payment of the debt out of any of the debtor's realty by forcing its sale. New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 411-12, 587 A.2d 1265 (1991); 3 Richard R. Powell, Powell on Real Property ¶ 477[2] at 38-6 (1990). Thus, it is clear that a judgment creditor does not have the same type of *437 interest in property as does a mortgagee; therefore, there is no basis to interpret the statute broadly to include judgment creditors within the class of persons, like mortgagees, entitled to exercise a right of redemption of a tax sale certificate.
Nor is there a public policy basis to extend the right of redemption of tax sale certificates to judgment creditors. The New Jersey Tax Sale Law, N.J.S.A. 54:5-1 to -104, was enacted to encourage the sale and foreclosure of tax lien certificates to assist municipalities in collecting revenue for delinquent real estate taxes and other municipal liens. Bron v. Weintraub, 42 N.J. 87, 91, 199 A.2d 625 (1964); Lonsk, supra, 168 N.J.Super. at 182, 402 A.2d 259. These statutory provisions are expressly intended to be "liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles [to land] may thereby be secured." N.J.S.A. 54:5-85; see also N.J.S.A. 54:5-3; Lonsk, supra, 168 N.J.Super. at 182, 402 A.2d 259.
In order to effectuate the remedial objectives of the statute, the Legislature made municipal liens paramount to prior claims and set forth a detailed procedure for the sale, redemption, and foreclosure of such liens. A brief review of the statutes may be instructive to better understand the procedure established by our Legislature to facilitate the collection of taxes. When a property owner fails to pay property taxes or other municipal assessments on a property, a first priority lien is created for the amount due, plus interest, penalties, and costs. N.J.S.A. 54:5-6 to -9. The lien attaches to the property and does not become a personal liability of the taxpayer. N.J.S.A. 54:5-6. When a lien remains in arrears, the tax collector is required to "enforce the lien by selling the property in the manner set forth" by the Tax Sale Law. N.J.S.A. 54:5-19.
Municipalities sell tax certificates to generate funds owed by delinquent taxpayers because "[m]unicipalities depend on the collection of property taxes and other assessments to fund the many services provided to residents." Michael G. Pellegrino, Ralph Allocca & Ronnie Spring, Why the Courts Should Sweep Away an Old Decision and Allow Receivers in Tax Sale Certificate Foreclosures, 142 N.J.L.J. 8 (Oct. 2, 1995), see also Note, Tax Sale Law in New Jersey: A Re-Examination, 26 Rutgers L.Rev. 266 (1973); Kerr v. Trescher, 34 N.J.Super. 437, 444, 112 A.2d 598 (Ch.Div.1955). As our Supreme Court has noted on several occasions, quoting Oliver Wendell Holmes:
[T]axes are the lifeblood of government, the vital force needed to sustain the public interest. Stated otherwise, "Taxes are what we pay for civilized society." [City of Philadelphia v. Bauer, 97 N.J. 372, 384, 478 A.2d 773 (1984) (quoting City of Philadelphia v. Austin, 86 N.J. 55, 65-66, 429 A.2d 568 (1981), quoting, in turn, Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100, 48 S.Ct. 100, 105, 72 L.Ed. 177, 183 (1927) (Holmes, J., dissenting)).]
It is in the public interest to encourage parties to purchase tax liens to enable municipalities to receive their lost tax revenues. Simon v. Chicago Title Ins. Co., 363 N.J.Super. 582, 587, 833 A.2d 1110 (App.Div.2003). The public policy is advanced by our decision in this case.
The sale of the certificate is made in fee simple, subject to redemption at the lowest rate of interest bid at the sale. N.J.S.A. 54:5-32, -54. It is generally the expectation that the certificate will be redeemed at a profit to the lien holder. The certificate may be sold to the public, the *438 municipality, or even to the State. N.J.S.A. 54:5-30.1, -34, -34.1. These certificates are assignable, N.J.S.A. 54:5-54, and may be recorded as a mortgage with the county recording office, N.J.S.A. 54:5-50.
Although the property is "sold" as evidenced by a tax sale certificate, N.J.S.A. 54:5-46, a tax sale certificate is not an outright conveyance, and the certificate holder does not have title to the land. Savage v. Weissman, 355 N.J.Super. 429, 436, 810 A.2d 1077 (App.Div. 2002); Township of Jefferson v. Block 447A, Lot lO, 228 N.J.Super. 1, 4, 548 A.2d 521 (App.Div.1988); Gasorek v. Gruber, 126 N.J.Super. 511, 515, 315 A.2d 706 (App.Div.1974). The certificate holder succeeds to the lien interest of the taxing district. Weissman, supra, 355 N.J.Super. at 436, 810 A.2d 1077; Township of Jefferson, supra, 228 N.J.Super. at 4, 548 A.2d 521; Manning v. Kasdin, 97 N.J.Super. 406, 417, 235 A.2d 219 (App.Div.1967), certif. denied, 51 N.J. 182, 238 A.2d 469 (1968). The certificate holder's interest consists of three significant rights: (1) the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold, up to a maximum of 18%, N.J.S.A. 54:5-32, -58; (2) the right to redeem from any other holder a subsequently issued tax sale certificate, Realty Sales Corp. v. Payne, 76 N.J.Super. 59, 61-62, 183 A.2d 772 (Ch. Div.1962), aff'd o.b., 78 N.J.Super. 504, 189 A.2d 458 (App.Div.), certif. denied, 41 N.J. 162, 195 A.2d 305 (1963); and, most importantly, (3) the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including the owner's, N.J.S.A. 54:5-86. Township of Jefferson, supra, 228 N.J.Super. at 4-5, 548 A.2d 521.
The legislative scheme is intended to transfer the burden of foreclosure from a municipality, whose primary occupation is governance, to private individuals. Simon v. Deptford Township., 272 N.J.Super. 21, 26, 639 A.2d 328 (App.Div.), certif. denied, 137 N.J. 310, 645 A.2d 139 (1994). The "legislative objective [of the Tax Sale Law]... is to enable local governments to realize taxes by returning property to the paying tax rolls without first expending money to foreclose or bar the equity of redemption." Ibid. In order to encourage purchasers of tax sale certificates, and thereby aid municipalities in raising revenue, the Legislature also encourages the foreclosure of these certificates. Bron, supra, 42 N.J. at 91, 199 A.2d 625; Lonsk, supra, 168 N.J.Super. at 182, 402 A.2d 259. A non-municipal purchaser may, after two years from the date of sale, institute an action to bar the right of redemption by way of a strict foreclosure action filed in the Chancery Division of the Superior Court. N.J.S.A. 54:5-86. In such an action, the foreclosing tax certificate holder submits proofs and asks the court to fix the amount, time, and place for redemption. If no redemption is made by that deadline, final judgment is entered, barring the right of redemption and foreclosing all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and the certificate holder is vested with an estate of inheritance in fee simple, free and clear of all liens. N.J.S.A. 54:5-87.
The foreclosure does not wipe out a judgment against a property owner, but only eliminates the lien of the judgment on the parcel in question. New Brunswick Sav. Bank, supra, 123 N.J. at 413-14, 587 A.2d 1265. By reducing the ranks of those entitled to redeem, the 1994 amendment to N.J.S.A. 54:5-54 comports with the legislative policy of consciously and intentionally increasing the viability and efficiency of the Tax Sale Law and foreclosure process.
*439 If an executing judgment creditor, not enumerated within the specified interests entitled to redeem a tax sale certificate being foreclosed, were included within the statutory ambit, it would thwart the statutory scheme and foster uncertainty in titles. More particularly, if the statute were given an expansive reading as urged by Crown, then a subsequent purchaser of fee simple title of tax foreclosed real estate would experience the same difficulties in clearing title that the amended statute is intended to eliminate.

III.
Pursuant to N.J.S.A. 54:5-9, as a municipal lienholder, CM had the statutory priority and authority to foreclose on its tax sale certificate. As a judgment creditor, Crown was in a subordinate position with an inferior lien and no statutory ability to redeem the tax sale certificate. Id; N.J.S.A. 54:5-54. In defending against CM's foreclosure action, Crown attempted to rely upon the doctrine of equitable subrogation and asserted it was an equitable owner of the property. More particularly, Crown argued, it should be permitted to stand in the owner's shoes and redeem the tax sale certificate based on the exhaustive actions it had taken, and money it had expended, to get the property titled back into Gordon's name and execute on its judgment by sheriff's sale, stayed only by Gordon's unjustified interference.
Judge Davis was not persuaded by Crown's argument, which he categorized as "turn[ing] the doctrine of equitable subrogation somewhat on its head." In concluding that Crown was not entitled to redeem under the theory of equitable subrogation, he stated:
Equitable subrogation is used to put a party who has already expended the time and money necessary to protect its interest to secure its place. Crown wishes to use the doctrine of equitable subrogation in order to secure its place prior to expending the time and money necessary to protect its interest. This distinction is a meaningful one, if only because the equitable maxim on which the doctrine is at least in part basedequity does that which ought to be doneis highly dependent upon the thing already being done....
Crown is not a surety of the debt, and so Crown must find some other means of invoking equitable subrogation. Kaplan [v. Walker, 164 N.J.Super. 130, 138, 395 A.2d 897 (App.Div.1978) ] stands for the proposition that equitable subrogation may be invoked to protect one with an existing ownership interest in the property.... The court must pause before permitting Crown to invoke equitable subrogation under Kaplan because Crown has only a lien interest in the Gordon property. The ability to invoke the doctrine of equitable subrogation depends upon the existence of an ownership interest....
Research fails to reveal cases in which the doctrine of equitable subrogation was invoked based upon the fraudulent acts of a third party or upon the weight of a subrogee's efforts. The one case cited by Crown in support of its theoryGutermuth v. Ropiecki, 159 N.J.Super. 139, 387 A.2d 385 (Ch. Div.1977) [holding, under the doctrine of equitable subrogation, purchasers who paid off and discharged mortgages and judgments that were open of record before the closing, were entitled to discharge of a judgment lien which had been docketed against one of the grantors shortly after conveyance of property to purchasers but before the deed and purchase money mortgage were recorded] does not address the issue at bar and is of little value to the court.
*440 ....
That Crown is not a surety means that to permit it to invoke the doctrine of equitable subrogation would result in an outcome contrary to the expressed intent of the legislature.
Judge Davis properly exercised his discretion in rejecting Crown's equitable subrogation argument. See Metrobank For Sav., FSB v. Nat'l Cmty. Bank of New Jersey, 262 N.J.Super. 133, 144, 620 A.2d 433 (App.Div.1993) (citing Goldome Realty Credit Corp. v. Harwick, 236 N.J.Super. 118, 126, 564 A.2d 463 (Ch. Div.1989) (holding subrogation, as an equitable doctrine, is applied only in the exercise of the court's equitable discretion)). We agree with his analysis. Crown was not a surety of Gordon, merely a judgment creditor. Crown was not liable for any of Gordon's debt nor was there any contractual relationship between the parties. Moreover, Crown did not pay any money on behalf of Gordon. The funds it expended to set aside the transfer of the property were for the sole purpose of preserving an asset available for partial satisfaction of its own judgment. Thus, there is no basis to invoke the doctrine of equitable subrogation to permit the judgment creditor to redeem the tax sale certificate and defeat the certificate holder's ability to foreclose.
In considering the equities of the case, the Chancery Division judge was also persuaded by the fact, as are we, that Crown had the same ability to purchase the tax lien certificate as did CM. Although the judgment creditor made a large expenditure of time and money to set aside the fraudulent conveyance of Gordon's property, it failed to preserve its interest in the property with respect to a municipal lienholder. As Judge Davis noted,
In protecting its interest to the extraordinary lengths it did, Crown should have availed itself of the existence of the tax sale certificates [which are recorded, and are disclosed upon any search of title for a particular property] and taken the appropriate actionpurchasing the tax sale certificates and redeeming them itselfas it seeks to do now. Though Crown has surely done much to protect its interest, Crown slept on its rights in this important regard. The statute disfavors Crown in the first instance; to have slept on such an important right must, in the court's view, prove fatal to Crown's prayer for relief.

IV.
On appeal, Crown also asserts a constitutional challenge, claiming the motion judge's narrow interpretation of N.J.S.A. 54:5-54, precluding judgment creditors from the right of redemption, renders notice by publication of tax sales pursuant to N.J.S.A. 54:5-26 unconstitutional. According to Crown, this results in a deprivation of judgment creditors' property interests, particularly those located outside New Jersey. Crown concedes it is not appropriate here to challenge the constitutionality of either statute, because the issue was not raised below and because it did not notify the Attorney General of such challenge as required by Rule 4:28-4. Crown asks us, however, if we affirm Judge Davis's interpretation of N.J.S.A. 54:5-54, to impose a judicial requirement on N.J.S.A. 54:5-26, consistent with due process, that judgment creditors receive actual notice of the initial tax sale. According to Crown, "[i]t would become constitutionally necessary to provide actual notice to judgment creditors of the initial tax sale so that they may act to protect their interests at that time which would apparently be their last opportunity to do so." We decline to do so. We perceive no infirmity in the statutory scheme to warrant judicial intervention. Crown has not *441 demonstrated an entitlement to enhanced notice. New Brunswick Sav. Bank, supra, 123 N.J. 402, 587 A.2d 1265 (1991). It had ample opportunity to purchase and redeem the tax sale certificate. Crown's recourse is with the Legislature, not with the court.
In order to divest title under a tax sale, there must be strict compliance with the notice provisions of the statute. State v. Landis Township, 50 N.J.L. 374, 379, 13 A. 251 (1888); Mitsch v. Riverside Township, 86 N.J.L. 603, 608, 92 A. 436 (1914). Notice of the sale, identifying the property, owner, and total amount due, must be sent to the owner, N.J.S.A. 54:5-27, and posted in public places in the municipality and published in a newspaper of general circulation. N.J.S.A. 54:5-25 and -26. These requirements, with which the Township complied, satisfy due process and attract third parties to the opportunity to acquire the property. Additionally, prior tax sale certificates on the property are recorded, as are assignments, N.J.S.A. 54:5-50, and are disclosed upon any search of title for a particular property.
Because Crown domesticated the judgment in New Jersey after the 1994 amendment to N.J.S.A. 54:5-54, it should have been aware it could not rely on any legal entitlement to redeem the tax sale certificate. Crown was on notice of delinquent taxes and the issuance of prior tax certificates on the property. Crown could have contacted the tax collector at any time after obtaining its judgment against Gordon to inquire about a tax sale of the property. Crown could have purchased the subject certificate at the July 1999 public municipal sale or received an assignment during the two and one-half year period prior to the assignment to CM. Crown had the same ability as CM to secure the tax sale certificate, but failed to protect its interest under N.J.S.A. 54:5-54. Neither equitable nor legal principles justify placing a judgment creditor, particularly one who sleeps on its rights, in a better position than a tax sale certificate holder with regard to the right to redeem from foreclosure of the certificate.
Affirmed.