NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3464-16T2

MARY E. BRESLIN,

    Plaintiff-Appellant,

v.

NORTHGATE CONDOMINIUM
ASSOCIATION, INC.; THE BOARD
OF TRUSTEES OF NORTHGATE
CONDOMINIUM, INC.; and
WILKIN MANAGEMENT GROUP,

    Defendants-Respondents.

_____

       Submitted November 1, 2018 – Decided November 30, 2018

       Before Judges Haas, Sumners and Mitterhoff.

       On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000276-15.

       Michael J. Breslin, Jr., attorney for appellant.

       Kates Nussman Ellis Farhi & Earle LLP, attorneys for respondents (Mariya Gonor, of counsel and on the brief).

PER CURIAM

This matter comes before us on defendant's motion to dismiss plaintiff's appeal as moot. In the underlying (as yet undecided) appeal, plaintiff Mary Breslin challenges a February 24, 2017 Chancery Division order dismissing her complaint against defendants Northgate Condominium Association, Inc. ("the Association"), The Board of Trustees of Northgate Condominium, Inc. ("the Board"), and Wilkin Management Group ("Wilkin"). We dismiss the appeal as moot.

By way of background, the Northgate Condominiums are seventy-one units located in Washington Township, New Jersey. They were established in 1984 by the recording of the Master Deed in the Bergen County Clerk's Office in accordance with the New Jersey Condominium Act, N.J.S.A. 46:8B-1 to -28. ("the Act"). Defendant Northgate Condominium Association, Inc. is the entity responsible for the administration of the condominiums and is governed by its bylaws.

In October 2001 the Association learned of a proposal by Caliber Builders ("Caliber") to construct senior citizen housing on an adjacent property. The Board determined that water runoff from the proposed development would damage Northgate's common elements and thereby diminish property values. The Northgate unit owners vehemently opposed the proposed construction and

at their annual meeting in 2003 voted unanimously to hire an engineering expert to explore possible ways to derail the Caliber project. By letter dated December 10, 2004, the Board advised the unit owners of its ongoing legal and engineering review of the Caliber project. In that same letter, the Board noted that an additional monthly fee of $50 would be necessary to fund Northgate's review of the Caliber project. The $50 "special assessment" was considered a "non-budgeted expense" that could not be charged against the Association's reserve fund.

In 2008, the Board filed suit against Caliber after the municipality approved the project. In 2013, the Board announced that it required an additional assessment of $1500 per owner to "refund the reserves" from which $130,000 had been withdrawn to pay legal fees for the ongoing litigation. Less than a year later, plaintiff purchased her unit. By the time the years-long Caliber litigation settled, the Association had incurred substantial legal and engineering fees. Accordingly, on April 28, 2015 the Board voted to impose an equal $10,000 "annual/common assessment" on each unit owner to be paid in six installments through 2018.

On September 16, 2015, Plaintiff instituted this action. The issue at trial was whether the Board had the authority to impose a $10,000 assessment on each unit owner. Plaintiff's position was that the assessment imposed was a

A-3464-16T2

"special assessment" that required a vote of the owners, and because the unit owners never approved the assessment, the Board had no authority to impose it.

After a six-day trial, the judge entered an order of judgment in favor of defendants. In her accompanying opinion, the trial judge found that the Association's involvement in the Caliber litigation was rooted in its duty to protect condominium property under N.J.S.A. 46:8B-14 and the Master Deed. The court found that because the Caliber Project would cause water runoff to damage Northgate's "[g]eneral [c]ommon [e]lements," the Board properly incurred litigation costs in opposing the project. The court further determined that the assessment was properly characterized as a common assessment as the legal fees were incurred to protect the common elements of the property, so long as the assessment was imposed proportionally. After the judgment in their favor, the Board passed a resolution imposing two additional common assessments: one for $710,000 to pay legal fees associated with the Caliber and Breslin litigations payable in installments through 2020; and a second for $35,000 to cover the costs of the Breslin appeal.

This appeal ensued. On appeal, plaintiff argues that the trial court erred in concluding that the assessment was a common, rather than a special, assessment.

A-3464-16T2

While the appeal was pending, and in the face of substantial outstanding legal fees, a newly installed Board retained new legal counsel to negotiate a reduction in legal fees with prior counsel, Beattie Padovano, LLC ("Beattie"). In that regard, in addition to the legal and engineering expenses incurred in the Caliber litigation, the Association incurred over $425,000 in legal fees at the trial level to defend the Breslin litigation.

Those negotiations resulted in a very favorable proposed reduction of Beattie's fees from $605,633.99 to $262,496.03. The Board, however, was concerned that the settlement would be paid using funds from the recently imposed $710,000 common assessment because the Board's imposition of the common assessments are subject to attack in this appeal. Accordingly, the Board decided to request that the unit owners approve and ratify as "special assessments" all of the prior assessments and that portion of the $710,000 assessment sufficient to cover the settlement.

In that regard, on July 25, 2018 an informational "Town Hall" meeting was held wherein legal counsel presented the proposed settlement with Beattie and outlined the strategy of seeking unit owner ratification and approval of the prior assessments so as to moot this appeal. On August 14, 2018, a Notice of Special Meeting of the unit owners was mailed to all unit owners of record, scheduling a Special Meeting for September 13, 2018, for the sole purpose of

voting to approve and ratify the prior assessments, together with a detailed "Resolution of the Unit Owners of Northgate Condominium Association, Inc. Ratifying Prior Assessments and Approving a Special Assessment to Fund a Settlement with Beattie Padovano."

On September 13, 2018, the unit owners voted by an overwhelming margin (48 in favor, 14 against) to approve and ratify the old Board's assessments as "special assessments," and to fund the legal fee settlement with Beattie. Immediately following the announcement of the results, the Board held a Board meeting open to attendance by unit owners, which was noticed in accordance with N.J.A.C. 5:20-1.2. The agenda for the meeting was to approve the special assessments ratified by the unit owners and to approve the proposed settlement with Beattie. The Board approved the agenda items by a vote of 6-0.

With this development, the issues presented in this appeal are now clearly moot. "A case is moot if the disputed issue has been resolved, at least with respect to the parties who instituted the litigation." Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd., 366 N.J. Super. 323, 330 (App. Div. 2004) (citation omitted). "[C]ontroversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993) (citation omitted). Dismissal for mootness is appropriate where "a judgment cannot grant effective relief, or there

is no concrete adversity of interest between the parties." Caput Mortuum, 366 N.J. Super. at 330 (citations omitted).  A court may consider events that occur subsequent to the filing of an appeal in determining that an appeal is moot.  Ibid. (holding that the appeal was moot after the court was advised at oral argument that the controversy had been resolved subsequent to the filing of the appeal).

Here, plaintiff's concern that the assessments were in fact special assessments has been resolved by virtue of the unit owners' retroactive approval and ratification of the prior assessments as special assessments.  It is well established that even if the acts of a corporate board were infra vires due to a failure to obtain shareholder approval and/or failure to follow procedural formalities, such as voting in a properly noticed board meeting, same can be ratified after the fact.

> "Acts that are ultra vires are void and may not be ratified, while infra vires acts may be.  An act is ultra vires if the municipality [was] utterly without capacity to act.  On the other hand, an intra vires act is one that is merely voidable for want of authority."
>
> [Grimes v. City of E. Orange, 288 N.J. Super. 275, 279 (App. Div. 1996) (internal citations omitted).]

The ability to retroactively ratify an infra vires act has expressly been extended to Condominium Associations.  See Port Liberte II Condo. Ass'n, Inc.

v. New Liberty Residential Urban Renewal Co., LLC, 435 N.J. Super. 51, 66 (App. Div. 2014).

> Ratification must be accomplished with the same formalities required for the original exercise of power. If so accomplished, the ratification relates back to the date of the original action.
>
> [Ibid. (internal quotations and citations omitted).]

In this case, Article VI, Section 7 of the bylaws states, in pertinent part, that

> [T]he Board is authorized to levy, in any assessment year, a special assessment(s) applicable to that year only, for any lawful purpose necessary for the benefit of The Condominium or the health, safety or welfare of the Unit Owners, provided said special assessment has first been approved by a majority of the members present and voting at a members meeting at which a quorum is present. Written notice of said meeting shall have been sent to all Unit Owners at least thirty days in advance . . . .

Because the required thirty-day notice was provided, and the overwhelming majority of the unit owners were present and voted in favor of the special assessments, the approval and ratification of the special assessments were validly adopted and relate back to the date of the first and all subsequent assessments. Therefore, this appeal is now moot.

Plaintiff asserts that if we do not decide the merits of the appeal, future unit owners may be subject to improper assessments, and, therefore, she asks

that we issue an advisory opinion delineating the parties' future rights and responsibilities under Northgate's Master Deed and bylaws. However, "[t]he notion that a court of appeals willy-nilly can decide issues unnecessary to the outcome of the case results in the wholesale issuance of advisory opinions, a practice our judicial decision-making system categorically rejects." State v. Rose, 206 N.J. 141, 189 (2011) (Rivera-Soto, J., concurring in part and dissenting in part) (citation omitted). We are not persuaded that this is a matter of significant public importance warranting our determination of abstract legal issues where there is no longer a controversy between the parties. See Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996) (noting that "[o]rdinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract").

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION