# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0877-24

K.S.,[1]

    Petitioner-Appellant,

v.

DEPARTMENT OF HUMAN
SERVICES, DIVISION OF
FAMILY DEVELOPMENT,[2]
and UNION COUNTY DIVISION
OF SOCIAL SERVICES,

    Respondents-Respondents.

_____

Submitted December 18, 2025 – Decided March 23, 2026

Before Judges Bishop-Thompson and Puglisi.

On appeal from the New Jersey Department of Human Services, Division of Family Development, Docket No. C402092020.

K.S., self-represented appellant.

---

[1]  We use initials to protect the petitioner's privacy interests.

[2]  The caption omits the Department of Human Services, Division of Family Development, which we have corrected in our opinion.

Matthew J. Platkin, Attorney General, attorney for respondent Department of Human Services, Division of Family Development (Donna Arons, Assistant Attorney General, of counsel; Elizabeth M. Tingley, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner K.S. appeals from the August 29, 2024 final agency decision issued by the Department of Human Services, Division of Family Development (DFD). The DFD's decision, which followed a hearing before an Administrative Law judge (ALJ), terminated K.S.'s emergency assistance (EA) benefits and imposed a six-month ineligibility period for those benefits.. We affirm.

On appeal, K.S. contends the ALJ erred in terminating her EA benefits for housing. She argues there was sufficient evidence in the record showing she was not approved for Section 8 housing[3] and, as a result, her emergency hardship stay for rental assistance and homeless shelter placement should not have been for six months.

---

[3] The Section 8 Housing Voucher Program is funded by the U.S. Department of Housing and Urban Development and assists in making safe and quality housing in the private rental market affordable to low- and very low-income households by reducing housing costs through direct rent subsidy payments to landlords. Section 8 Housing Choice Voucher, Dep't of Cmty. Affs., https://www.nj.gov/dca/dhcr/offices/section8hcv.shtml (last visited March 9, 2026). The program is administered through the New Jersey Department of Community Affairs (DCA).

The DFD argues however, the matter is moot. It asserts, following the period of disqualification, K.S. reapplied for and was subsequently found eligible for EA benefits.

"An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). Moreover, an issue is also moot when the controversy no longer exists, and the issue presented has been resolved. See Caput Mortuum LLC v. S & S Crown Servs. Ltd., 366 N.J. Super. 323, 330 (App. Div. 2004) (citing Advance Elec. Co. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 166 (App. Div. 2002) (stating "[o]ur courts generally will not decide a case if . . . a judgment cannot grant effective relief")).

The dispute between the parties concerning K.S.'s six-month disqualification period for EA benefits has been resolved. Therefore, we see no reason to address this aspect of K.S.'s argument raised on appeal.

Separate from her challenge regarding the six-month disqualification penalty, K.S. also contests the termination of her EA benefits. A court's review of an agency's determinations is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police

3

& Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022) (citing Hargrove v. Sleepy's, LLC, 220 N.J. 289, 201-02 (2015)).

We "review[] agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). Therefore, an agency determination on the merits "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27).

EA benefits in the form of emergency shelter and housing assistance are administered at the county level consistent with DFD's supervision and relevant regulations. See N.J.A.C. 10:90-6.3(a). "[EA] shall be made available through the Work First New Jersey [(WFNJ)] program as a supportive service to meet the emergent needs of WFNJ recipients, so that recipients shall not be prevented from complying with the work requirement due to disruptions caused by homelessness and related emergencies." N.J.A.C. 10:90-6.1(a). In essence, the

4

program functions as a social safety net, offering safe and affordable housing to individuals experiencing significant hardship.

As a Supplemental Security Income benefits recipient, K.S. is eligible for EA due to a physical disability.  She applied for Section 8 housing through the Union County Division of Social Services (UCDSS).  On August 7, 2023, she acknowledged and signed for receipt of a Housing Choice Voucher (HCV), which had an expiration date of October 6, 2023, with an extension of expiration until February 5, 2024.

K.S. received and signed a revised September 20, 2023 EA Service Plan for temporary housing at a hotel in East Orange.  The plan, which began on that date and continued through February 20, 2024, outlined the program's benefits and requirements.  Under the section entitled Client's Service Plan/Responsibilities, the box checked for Other, states:  "YOU ARE APPROVED FOR SECTION 8 VOUCHER EFFECTIVE [August 7, 2023] – [October 6, 2023].  IF YOU FAIL TO FIND AN APARTMENT AND [LOSE] YOUR SECTION 8 VOUCHER THE AGENCY WILL IMPOSE A SIX-MONTH PENALTY.  YOU WILL NOT RECEIVE ANY FORM OF EMERGENCY ASSISTANCE FOR SIX-MONTHS."  K.S. also signed a WFNJ

5

Individual Responsibility Plan, which contained this same language regarding the consequences of non-compliance.

K.S. did not obtain housing by the extended expiration date. As a result, UCDSS terminated her EA benefits effective March 31, 2024, and imposed a six-month penalty beginning April 1, 2024.

K.S. appealed the March 31 termination, which was stayed pending the hearing. At the fair hearing, the ALJ addressed the UCDSS's determination. The judge considered documentary evidence and the testimony of K.S. and a DCA supervising field representative.

The ALJ issued an initial decision on July 26, 2024, determining K.S. had not established good cause for her refusal to accept and secure a Section 8 apartment during the 180-day HCV period, as her primary reason was a preference to remain in the hotel. The judge affirmed UCDSS's termination of K.S.'s EA benefits and the six-month disqualification period under N.J.A.C. 10:90-6.1(c)(3)(viii).

On August 29, 2024, the DFD issued its final agency decision. It reviewed the record and the initial decision and adopted the ALJ's findings of fact and conclusions of law. It cited to N.J.A.C. 10:90-6.1(c)(3)(viii), which states EA benefits shall not be provided when the adult applicant or recipient refused to

accept Section 8 housing.  Additionally, N.J.A.C. 10:90-6.1(c)(3) provides EA benefits shall not "be provided for a period of six months when an adult EA applicant or recipient has caused [their] own homelessness, without good cause."  The decision noted K.S.'s six-month penalty would commence on the date of the final decision.

The record shows pursuant to N.J.A.C. 10:90-6.6(a), by signing both the EA Service Plan and the WFNJ agreement, K.S. agreed to "mandatory and non-mandatory activities as determined by the [UCDSS]."  However, she did not make any attempt to fulfill these requirements.  K.S.'s non-compliance with the terms of both agreements, without good cause, justified the UCDSS—and ultimately the DFD—in terminating her eligibility for EA benefits and imposing a six-month penalty.  Accordingly, we conclude the DFD's decision was supported by substantial evidence in the record and was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0877-24