8 N.J. Super. 33 (1950)
73 A.2d 197
ANAIS CLARK AND JOHN CLARK, PLAINTIFFS-APPELLANTS,
v.
THE CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ROBERT NETCHERT AND WILLIAM F. HOUSE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1950.
Decided May 11, 1950.
*35 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Charles W. Hutchinson argued the cause for the plaintiffs-appellants (Messrs. Markley & Broadhurst, attorneys; Mr. Edward A. Markley, of counsel).
Mr. Harold Krieger argued the cause for the defendants-respondents (Mr. John B. Graf, attorney).
The opinion of the court was delivered by EASTWOOD, J.A.D.
Plaintiffs appeal from an order of the Hudson County Court, denying their motion to strike certain defenses of the defendant, City of Jersey City, and from the judgment entered on the pleadings in favor of the defendants.
A chronology of events will serve to clarify the matter. On January 9, 1942, the City of Jersey City (hereinafter referred to as the "City"), purchased the tax sale certificate to property known as No. 116 Neptune Avenue, Jersey City, and thereafter recorded the same; it took possession and collected the rents; on September 10, 1945, the City filed a bill to foreclose its tax sale certificate; on March 19, 1946, a final decree was entered, whereby the City became vested with title; on October 29, 1946, plaintiff, Anais Clark, was injured by *36 a portion of the roof and ceiling collapsing and falling on her while she was an invitee in the building, for which injuries this action was instituted; on July 17, 1948, the City permitted the Mortgage Trading Corporation, assignee of the first mortgage, to pay the tax arrearages due the City, although the mortgagee's right of redemption had been foreclosed; on July 26, 1948, to consummate the arrangement with the Mortgage Trading Corporation, the final decree in the foreclosure of the tax sale certificate was vacated and set aside on the City's motion.
In their action for damages, plaintiffs alleged that the City was owner and landlord; that defendants, Netchert and House, were its agents for management of same; that the common roof and ceiling of the building became unsafe and a portion thereof collapsed, seriously injuring plaintiff, Anais Clark. By its fourth separate defense, defendants alleged that they were engaged in a governmental function and that liability was thus precluded. By its seventh separate defense, based on R.S. 54:5-53.1, defendants claimed specific exemption from liability.
Plaintiffs moved to strike the fourth and seventh separate defenses of defendants and the trial court denied their application, and on reargument thereof, affirmed the denial. At the argument of plaintiffs' motion to strike the fourth and seventh defenses, it was stipulated by the parties that the court's determination of the legal sufficiency of these defenses was dispositive of the action. Final judgment was, therefore, rendered in favor of defendants.
Plaintiffs contend that R.S. 54:5-53.1 exempts a municipality from liability only during the period of time it is collecting rents under the tax sale certificate; that this accident occurred after the entry of the final decree of foreclosure had vested absolute title in the City; that the operation of the property subsequent thereto was not, therefore, the exercise of any governmental function, but a proprietary one and the City is liable for any act of negligence; that the opening of the final decree on July 26, 1948, could have had no retroactive *37 effect upon plaintiffs' cause of action; that the court had no power to vacate and set aside the final decree, in view of the provisions of R.S. 54:5-87.
Under our statutory system for the collection of delinquent taxes by the sale of lands, the tax sale itself does not operate as a final and irrevocable divestiture of the title of the owners of the land. It merely vests the purchaser with an inchoate right or interest subject to a statutory right of redemption, exercisable within a specified time after the sale. At the sale, the purchaser receives a certificate which is his indicia of title. Kurzius v. The Hillside Land Co., 112 N.J. Eq. 466 (Ch. 1933). Upon the holder of a tax sale certificate taking possession, his rights and duties are akin to those of a mortgagee in possession. Taylor v. Morris, 1 N.J. Super. 410 (Ch. Div. 1948), and cases cited therein.
R.S. 54:5-53.1 authorizes a municipal purchaser of the tax sale certificate to enter into possession of the lands and collect the rents and profits and credit same against the amount due under the tax sale certificate and subsequent assessments. This legislative enactment further provides that:
"Such municipality and its officers, agents or employees shall not be liable or accountable to the owner or to any other person having an interest in said property for failure to collect rents or profits therefrom but said officers, agents or employees shall remain so liable and accountable to said municipality and such municipality and its officers, agents or employees shall not be liable for injury to said property or to the person or property of any other person from the use of the property for the purposes of this section, any law to the contrary notwithstanding. L. 1942, c. 54, p. 292, § 1, as amended L. 1943, c. 144, p. 393, § 1."
Prior to the effective date of this enactment (April 8, 1943), a municipality enjoyed no statutory exemption from liability for injury and damage resulting from the use of such property. Under R.S. 54:5-53.1, the municipality's immunity from liability is clearly limited to that period of possession between the acquisition and recording of the tax sale certificate and entry of the final decree in the foreclosure *38 action. It is during that interval that the municipality assumes possession akin to a mortgagee in possession  a receiver of rents and profits for credit against delinquent taxes. With the entry of the final decree, the municipality becomes vested with an estate in fee in the lands (R.S. 54:5-87) and the statutory immunity provided by R.S. 54:5-53.1 is withdrawn, inasmuch as possession is no longer as a receiver of income for credit against taxes, but as an owner letting for profit.
The fact that the Legislature has blended the public and private functions of a municipal corporation into one grant of power, renders difficult the distinction between them. However, we are of the opinion that once the final decree has been entered and a municipality continues in possession of the property, collecting rents and profits therefrom, the nature of the exercise of that power is private, rather than public. It is said in 62 C.J.S., Municipal Corporations, § 110, at p. 246:
"Proprietary powers are those particular powers usually referred to as incidental to home rule or local self-government, and, when acting in its proprietary capacity, the municipal corporation does so by force of permissive legislative enactments. A municipal corporation in its private or quasi-private capacity enjoys the powers and privileges conferred for its own benefit. Then the municipality acts for the private advantage of the inhabitants of the city, and to a certain extent for the city itself. In such case it is not acting in its governmental capacity as sovereign, or in a legislative capacity, but is acting in a proprietary capacity, or in a quasi-public capacity. It is performing a function, not governmental, but often committed to private corporations or persons with whom it may come into competition. The function may be municipal, but the method may not be, and it may lead to profit. So, when incident to performance of governmental function a profit is derived, then the activity is held to be proprietary in nature." Cf. Olesiewicz v. Camden, 100 N.J.L. 336 (E. & A. 1924).
Defendant argues that the legislative exemption from liability under R.S. 54:5-53.1 does not have the effect of "delimiting or narrowing the immunity of the City to a particular phase of the tax proceedings;" that the exemption continues until the City has restored the property to the tax rolls; that "The *39 facts establish that there was no physical change with respect to the operation of the property by the City. The City did not apply the income to its own use, nor did it run a market or a swimming pool * * *." The stipulation entered into between the parties, however, fails to show what was done with the revenue from the property after the City acquired title by virtue of the final decree.
When a municipality holds property as a private owner, it is chargeable with the duties and responsibilities that devolve upon individuals. In the case of Bengivenga v. Plainfield, 128 N.J.L. 418 (E. & A. 1942), at p. 419, it was held:
"It is well settled that any one injured by the negligence of a municipality acting in a proprietary function may maintain an action against a municipality. Fay v. City of Trenton, 126 N.J.L. 52; Martin v. Asbury Park, 111 Id. 364."
Based on the premise that the possession and management of this apartment house was the exercise of a proprietary function and in view of the liability of the municipality under the applicable cases, we are of the opinion that the plaintiffs' action against the defendants should have been entertained.
On March 19, 1946, by foreclosing rights of redemption of parties in interest pursuant to R.S. 54:5-87, the Court of Chancery cut off "* * * all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens * * *" and decreed an "* * * absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser."
The circumstances under which a final decree of foreclosure can be reopened are limited specifically by R.S. 54:5-87, which provides, inter alia:
"* * * no application shall be entertained to reopen the decree after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit."
In the light of such statutory restriction and in the absence of justifying circumstances, it is apparent that the opening of *40 the final decree of March 19, 1946, was erroneous. Even if this were not so, on the date of the accident, October 29, 1946, the final decree of foreclosure vesting the City with an absolute title, was in full force and effect. The reopening of that decree cannot operate retroactively and thus defeat plaintiffs' cause of action.
The judgment of the County Court is reversed.