NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3315-21

257-261 20TH AVENUE
REALTY, LLC,

     Plaintiff-Appellant,

v.

ALESSANDRO ROBERTO,[1]

     Defendant-Respondent,

and

FANNY ROBERTO, wife of
ALESSANDRO ROBERTO,
KELLER DEPKEN FUEL OIL
COMPANY INC., a/k/a HOP
ENERGY LLC, and MIDLAND
FUNDING LLC,

     Defendants.

_____

APPROVED FOR PUBLICATION

December 4, 2023

APPELLATE DIVISION

Argued October 17, 2023 – Decided December 4, 2023

Before Judges Sumners, Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-003349-21.

---

[1] Defendant's first name was incorrectly pleaded as Alesandro.

Elliott J. Almanza argued the cause for appellant (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith A. Bonchi, of counsel and on the briefs; Elliott J. Almanza, on the briefs).

Glenn R. Reiser argued the cause for respondent (Shapiro Croland Reiser Apfel & Di Iorio, LLP, attorneys; Glenn R. Reiser, of counsel and on the briefs; Ilan Danon, on the briefs).

Adam D. Greenberg argued the cause for amicus curiae National Tax Lien Association, Inc. (Law Offices of Honig & Greenberg, LLC, and Gary C. Zeitz, LLC, attorneys; Adam D. Greenberg and Robin London-Zeitz, on the brief).

Maryann Flanigan Sutherland argued the cause for amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, attorneys; Dawn K. Miller, Maryann Flanigan Sutherland, Robert Casagrand, David McMillin, Rebecca Schore, and Jeremy Silberman, on the brief).

Frank G. Marshall, Jr., Associate General Counsel, argued the cause for amicus curiae New Jersey State League of Municipalities (New Jersey State League of Municipalities, attorneys; Frank G. Marshall, Jr., on the brief).

David J. Deerson (Pacific Legal Foundation) of the California bar, admitted pro hac vice, argued the cause for amicus curiae Pacific Legal Foundation (Christina M. Martin (Pacific Legal Foundation) of the Washington, Oregon, and Florida bars, admitted pro hac vice, David J. Deerson, and Jonathan M. Houghton, attorneys; Christina M. Martin, David J. Deerson, and Jonathan M. Houghton, on the brief).

The opinion of the court was delivered by

PEREZ FRISCIA, J.S.C. (temporarily assigned).

In this tax sale foreclosure appeal, we address whether the United States Supreme Court's recent decision in Tyler v. Hennepin County, 598 U.S. 631 (2023), which declared a taxing authority's confiscation of a property owner's equity violated the Fifth Amendment Takings Clause, bars a third-party tax sale certificate holder's foreclosure of a property owner's equity under the New Jersey Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137, and if barred, whether pipeline retroactivity is afforded. We also address whether the motion judge's decision to vacate final judgment under Rule 4:50-1(f), based primarily on defendant having redemption funds and significant property equity, was an abuse of discretion.

Plaintiff 257-261 20th Avenue Realty, LLC appeals from the Chancery Division orders dated June 1, June 13, and June 16, 2022, which pursuant to Rule 4:50-1(f) conditionally vacated final judgment permitting redemption, vacated final judgment upon satisfaction of the conditions, and dismissed the action with prejudice. Plaintiff argues the judge erred in finding exceptional circumstances existed to vacate final judgment. Defendant, Alessandro Roberto, argues the totality of facts weighed in favor of exceptional circumstances to vacate final judgment and the judge did not abuse his

discretion.  After the judge's decision and the submission of merits briefs on appeal, the United States Supreme Court decided <u>Tyler</u>.

We affirm the decision to vacate final judgment, based on the judge's detailed findings of exceptional circumstances under <u>Rule</u> 4:50-1(f), discerning no abuse of discretion.  We also conclude cause exists to vacate judgment as the application of <u>Tyler</u> to New Jersey's similar TSL framework establishes that the confiscation of a New Jersey property owner's equity, through a tax sale foreclosure, violates the Fifth Amendment Takings Clause.  As <u>Tyler</u> established a new principle of law, pipeline retroactivity is afforded.

I.

The facts are largely undisputed.  Defendant owned a mixed residential and commercial use property located in Paterson, New Jersey.  The income-generating property consisted of two residential units, a carwash, an auto-mechanic's shop, a coffee shop, and a vacant store.  In 2010 and 2016, defendant failed to pay his sewer tax bills, resulting in plaintiff's $606 purchase of the following three property tax sale certificates:  (1) Certificate No. 2011-0001122 for $226.57 on June 9, 2010; (2) Certificate No. 2011-A04713 for $88.24 on October 28, 2010; and (3) Certificate No. 2017-002319 for $291.19 on June 23, 2016.

A-3315-21

Almost eleven years after the third tax sale certificate was purchased, in June 2021, plaintiff commenced a tax sale foreclosure pursuant to N.J.S.A. 54:5-86. After defendant was served with the complaint, he tried to redeem his property at the Office of the Tax Collector of Paterson. Defendant was denied redemption because the amount owed was greater than his available funds. Because defendant did not file an answer, the complaint proceeded through the Office of Foreclosure as an uncontested matter.

On October 21, 2021, plaintiff moved for an order setting the time, place, and amount of redemption. The judge issued an order setting the date of redemption as December 21, 2021; the place of redemption as the Office of the Tax Collector of Paterson; and the total amount of redemption as $32,973.15, consisting of $30,428.15 plus $2,545.00 in tax costs. Three days later, on October 25, 2021, plaintiff moved for default. On February 2, 2022, the judge entered final judgment.

One day after judgment was entered, but before defendant was served final judgment, defendant filed a Chapter 13 bankruptcy petition, which he later dismissed. Less than two months after judgment was entered, defendant moved pursuant to Rules 4:50-1(e) and (f) to vacate final judgment and to permit redemption. Defendant argued he was entitled to equitable relief from final judgment because he retained the redemption funds prior to moving to

5                                                                                    A-3315-21

vacate and would lose the significant equity in the property. Plaintiff opposed the motion, and in April 2022, moved on short notice for permission to make repairs based on the tenants' alleged concerns.

On May 19, 2022, the judge, in an oral decision, denied vacating final judgment under Rule 4:50-1(e), finding "relief from judgment should ordinarily not be granted where the so-called changed circumstances were actually anticipated at the time of the decree."[2] However, the judge granted relief under Rule 4:50-1(f) reasoning that "courts of equity must do their best to balance the equity." Although "plaintiff held these certificates, paid taxes, went through the process legitimately[,] and lawfully" obtained a final judgment, the judge found relief was warranted because: defendant had escrowed $50,000 in an attorney trust account to redeem; the property had "very substantial equity relative to the lien itself," as it was worth between $475,000 and $535,000;[3] and COVID-19 "may or may not have" impacted the collection of rents. The judge elucidated, "this is a case that is exceptional that warrants relief under Rule 4:50-1(f). I think that . . . it would be inequitable

---

[2] Defendant did not cross-appeal the denial of his application under Rule 4:50-1(e).

[3] Defendant had proffered an uncertified comparative analysis report by Roberto Sanchez, who did not testify. Although in his report Sanchez opined that the equity in the property was worth between $475,000 and $535,000, we only observe it was undisputed significant equity existed in the property.

and precedent at this juncture to allow a forfeiture of such significant equity for a seventy-five-year-old man, recognizing that it is commercial property." The judge also considered the lack of other encumbrances, and that defendant owned the property for over twenty years. The judge granted defendant's motion to vacate with conditions, finding unpersuasive plaintiff's arguments that the circumstances were "wholly unremarkable," not "exceptional," and that equity loss was a "circumstance inherent in the nature of tax foreclosure." Plaintiff's motion on short notice to make repairs was also denied.

The judge conditioned vacating final judgment on defendant's redemption within forty-five days, the payment of $10,000 for plaintiff's legal fees and costs, and the surrender of $2,400 plaintiff collected in rents. After defendant satisfied the conditions, the judge vacated final judgment and revested property title to defendant. Subsequently, plaintiff discharged its notice of lis pendens, which allowed defendant to record the court's June 13, 2022 order with the Passaic County Register. Three days later, the judge dismissed the foreclosure suit with prejudice on June 16, 2022.

II.

On appeal, plaintiff argues the judge erred in vacating final judgment because relief under Rule 4:50-1(f) was unwarranted. Plaintiff contends no exceptional circumstances existed and that the judge failed to abide by the

binding precedent established in <u>Del Vecchio v. Hemberger</u>, 388 N.J. Super. 179, 188 (App. Div. 2006) and the TSL statutory framework.  Plaintiff further argues, pursuant to N.J.S.A. 54:5-87, final judgment divests an owner of any equity, and the clear legislative intent was to secure marketable titles, thus barring the right of redemption.  Plaintiff asserts the equities weighed against defendant because he:  failed to pay the lien delinquencies for over a decade, retained his property collecting rent, falsely claimed an inability to pay based on his tenants' alleged rental arrears, and maintained the property in poor condition.

Plaintiff, in its supplemental brief,[4] argues <u>Tyler</u> is inapplicable to private lienholders.  Alternatively, plaintiff argues if <u>Tyler</u> applies, it should only be prospective to not violate private lienholders' due process rights.  Plaintiff argues <u>Tyler</u>'s prospective application has no bearing on our court's review of whether exceptional circumstances existed warranting vacation of judgment under <u>Rule</u> 4:50-1(f).

In opposition, defendant argues plaintiff's appeal should be rejected for its failure to seek a stay of the June 1, and June 13, 2022 orders.  Defendant argues plaintiff is estopped from appealing the orders because it:  accepted the

_____

[4]  On August 16, 2023, the court invited the parties to submit supplemental briefs to address the United State Supreme Court's holding in <u>Tyler</u>.

A-3315-21

redemption amount, counsel fees, and rental income awarded; discharged the lis pendens; failed to oppose the dismissal of the action with prejudice; and permitted defendant to record the June 13, 2022 order to perfect his ownership. Alternatively, defendant argues the court's decision was not an abuse of discretion because it considered that defendant: unsuccessfully attempted redemption; timely moved to vacate; escrowed sufficient redemption funds; retained substantial property equity; and encountered COVID-19 financial difficulties.

In his supplemental brief, defendant argues the United States Supreme Court's decision in Tyler is consistent with New Jersey law, as it stands to "prevent[] forfeiture of a property owner's substantial equity in tax sale foreclosure suits." Defendant argues both our Supreme Court and State Legislature recognized the holding in Tyler by implementing a Notice to the Bar[5] and introducing legislation[6] amending the TSL. Defendant alleges these actions illustrate the precedential effect of the decision on the TSL.

_____

[5] On July 12, 2023, the Supreme Court issued a Notice to the Bar providing that, in response to Tyler, the Office of Foreclosure was temporarily suspended from recommending final judgment in tax sale certificate matters filed after May 25, 2023. Sup. Ct. of N.J., Notice to the Bar: Tax Foreclosures – (1) Suspension of Office of Foreclosure Recommendations of Final Judgment; and (2) Relaxation of Court Rules (July 12, 2023).

At our invitation, the New Jersey State League of Municipalities, the National Tax Lien Association, Inc., Legal Services of New Jersey, and Pacific Legal Foundation appeared as amici curiae, to address what effect, if any, Tyler has on pending matters. Each organization filed briefs and appeared at oral argument. The League of Municipalities and the Tax Lien Association argue Tyler does not apply to private tax sale certificate holders, or, alternatively, it must only be applied prospectively and thus does not affect this or other pending matters.

Legal Services and Pacific argue in support of defendant, contending the current TSL scheme improperly permits unconstitutional takings. Legal Services and Pacific also argue for, at least, pipeline retroactivity relying on the test set forth in Coons v. American Honda Motor Company, 96 N.J. 419, 425 (1984) and the United States Supreme Court's recent order in Fair v. Continental Resources, 143 S. Ct. 2580 (2023), which remanded a third-party's forfeiture of a property owner's equity for reconsideration in light of Tyler.

---

6 On June 20, 2023, the New Jersey Legislature in response to Tyler introduced legislation that would amend the TSL, specifically the tax sale foreclosure scheme, to protect the equity accrued by property owners. See Sponsors' Statement to S. 3997 (June 20, 2023) ("The provisions of this bill are intended to address the unfairness of the loss of that equity to property owners who lose property in a tax lien foreclosure.").

A-3315-21

III.

Since the early 1900s, New Jersey has statutorily permitted the taking of a property owner's equity through tax sale foreclosures. Tax Sale Revision Act of 1918, L. 198, c. 237. In Tyler, the United States Supreme Court held Minnesota's statutory tax forfeiture law, which permitted the state to confiscate a property owner's equity, constituted a violation of the Fifth Amendment Takings Clause. 598 U.S. at 645-47. In light of the implication of the clear constitutional ruling in Tyler, that the forfeiture of a property owner's equity above the tax amount owed constitutes a prohibited taking, we now review New Jersey's TSL statutory framework. We are guided by the United States Supreme Court's charge that "[t]he taxpayer must render unto Caesar what is Caesar's, but no more." Id. at 647.

A review of the historic context of the TSL is instructive. The Legislature enacted the TSL as a remedial statute that must "be liberally construed to effectuate the remedial objects thereof." N.J.S.A. 54:5-3. Our Supreme Court has long recognized "two competing public policy goals" embodied in the TSL: "one to enhance the tax-collecting ability of municipalities by encouraging tax sale foreclosures and the other to protect property owners from the devastating consequences of foreclosure." Simon v. Cronecker, 189 N.J. 304, 315 (2007).

The Supreme Court has acknowledged the strong public policy considerations in protecting a distressed property owner's interest in not losing their home and existing equity.  See ibid.  Conversely, taxing authorities bear the significant and consequential competing interest on behalf of its citizens "to realize taxes by returning property to the paying tax rolls without first expending money to foreclose or bar the equity of redemption."  Varsolona v. Breen Cap. Servs. Corp., 180 N.J. 605, 621 (2004) (quoting Simon v. Deptford Twp., 272 N.J. Super. 21, 26 (App. Div. 1994)).  N.J.S.A. 54:5-85 encourages the "barring of the right of redemption by actions in the Superior Court to the end that marketable titles" are secured, but we have recognized that "'does not negate the specific textual provisions of the [TSL] that protect property owners' from forfeiture."  BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 128 (App. Div. 2021) (first quoting N.J.S.A. 54:5-85; and then quoting Cronecker, 189 N.J. at 322 n.10).  It is recognized these competing interests have often been in conflict and are so in this appeal.

In New Jersey, real property is subject to taxation.  N.J.S.A. 54:4-1. "Municipal governments depend on real estate taxes and other property-related assessments as their primary sources of revenue."  Cronecker, 189 N.J. at 318. The Legislature designed the TSL to create "a framework to facilitate the collection of property tax[] [arrears]" and address when a property is no longer

12

on the paying tax rolls. Varsolona, 180 N.J. at 620. When the owner of real property fails to pay property taxes, the TSL grants the municipal government a continuous lien on the property for the unpaid taxes owed, plus any penalties and costs of collection. N.J.S.A. 54:5-6. The TSL permits the conversion of liens to a stream of revenue for taxing authorities "by encouraging the purchase of tax [sale] certificates on tax-dormant properties." Cronecker, 189 N.J. at 318. "By authorizing the sale of liens in a commercial market, the [TSL] gives rise to 'a municipal financing option that provides a mechanism to transform a non-performing asset into cash without raising taxes.'" In re Princeton Off. Park LP v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 62 (2014) (quoting Varsolona, 180 N.J. at 610).

A tax sale certificate is created and sold when a municipality "enforce[s] the lien by selling the property as prescribed by" the procedure set forth in N.J.S.A. 54:5-19. Varsolona, 180 N.J. at 617 (quoting Savage v. Weissman, 355 N.J. Super. 429, 435-36 (2002)). At the sale, conducted by the tax collector, the municipality sells tax sale certificates on notice to the property owner. N.J.S.A. 54:5-25 to -32. A tax sale certificate may be sold to the public, the municipality, or the State. N.J.S.A. 54:5-30.1, -34, -34.1. At a public auction, biding starts at an eighteen percent per annum interest yield rate. Cronecker, 189 N.J. at 319; N.J.S.A. 54:5-32. In instances where the

13

interest rate has been bid down between zero and one percent, and two or more parties are still competing, the parties may bid a premium payment above the lien amount owed. N.J.S.A. 54:5-32. The party offering the highest premium wins the certificate. Ibid. "The successful bidder on a tax sale certificate agrees to pay to the municipality the taxes or assessments due on the property, as advertised." Cronecker, 189 N.J. at 319 (citing N.J.S.A. 54:5-31 to -32, -46). The tax sale certificate holder may thereafter record the certificate "as a mortgage on the land." Ibid. (quoting N.J.S.A. 54:5-50).

Under the TSL, a tax sale certificate holder obtains the right to: (1) "receive the sum paid for the certificate with interest at the redemption rate for which the property was sold"; (2) "redeem from the holder a subsequently issued tax sale certificate"; and (3) "acquire title by foreclosing the equity of redemption of all outstanding interests, including that of the property owner." In re Princeton, 218 N.J. at 63 (emphasis added) (quoting Varsolona, 180 N.J. at 618). When there are competing tax sale certificate holders, the first to receive a final judgment in foreclosure cuts off the other's right to redeem. Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 165 (App. Div. 2005).

Importantly, "a tax sale certificate does not give rise to an outright conveyance of the property, but rather creates 'a lien on the premises and

14

conveys the lien interest of the taxing authority.'"  In re Princeton, 218 N.J. at 67 (quoting Savage, 355 N.J. Super. 429 at 436); see also Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J. Super. 323, 335-38 (App. Div. 2004) ("[A] tax sale certificate is not an outright conveyance, and the certificate holder does not have title to the land."); N.J.S.A. 54:5-32 ("The sale shall be made in fee to such person as will purchase the property, subject to redemption at the lowest rate of interest.").  "The purchaser of a tax sale certificate . . . acquires a lien formerly held by the municipality's taxing authority, derived from the property owner's obligation to pay real estate taxes."  In re Princeton, 218 N.J. at 67.  "Under our statutory system for the collection of delinquent taxes by the sale of lands, the tax sale itself does not operate as a final and irrevocable divestiture of the title of the owners of the land.  It merely vests the purchaser with an inchoate right" which is "exercisable within a specified time after the sale" of the certificate.  Clark v. City of Jersey City, 8 N.J. Super. 33, 37 (App. Div. 1950).

If a property owner does not redeem within six months from the date that a municipality purchases a tax sale certificate, it may institute an in rem tax foreclosure action.  N.J.S.A. 54:5-104.29 to -104.75; Phillipsburg, 380 N.J. Super. at 163 n.2.  Alternatively, a third-party purchaser may commence an in personam foreclosure action seeking to bar the property owner's right of

15

redemption two years after its issuance of a tax sale certificate. N.J.S.A. 54:5-86; Savage, 355 N.J. Super. at 436. A third-party certificate holder may file a foreclosure action within "[twenty] years from the date of the sale." N.J.S.A. 54:5-79. "After the complaint has been filed redemption shall be made in that cause only, provided notice of the suit has been filed in the office of the tax collector." N.J.S.A. 54:5-98. Thereafter, the Superior Court may enter final judgment to foreclose the right of redemption in a foreclosure action. N.J.S.A. 54:5-87.

The interest of the tax sale certificate holder prior to final judgment "is subordinate to the property's owner's right of redemption." Cronecker, 189 N.J. at 319-20. A property owner may redeem "by paying to the collector . . . the amount required for redemption as . . . set forth" by the statutory requirements. N.J.S.A. 54:5-54. The taxing authority is to set "the amount required for redemption," N.J.S.A. 54:5-54, and to collect the amount owed through the tax collector's office, N.J.S.A. 54:5-54.1, as oversight over redemption is retained even after a lien interest is transferred to a third-party purchaser—the tax sale certificate holder. Also, "[i]f the certificate is redeemed, the purchaser is reimbursed and receives interest accruing at the rate established by the bid." Phillipsburg, 380 N.J. Super. at 167; see also N.J.S.A. 54:5-32; N.J.S.A. 54:5-58. Where a third-party purchaser pays a premium, and

16

the property is redeemed within five years of sale, the taxing authority must reimburse the third-party purchaser. N.J.S.A. 54:5-33. If the property is not redeemed within five years, the municipality retains the premium payment. Ibid.

Tax sale certificate holders know "from the start that most tax certificate investments end not in windfall profits from foreclosure but rather in high yield interest returns upon redemption." Cronecker, 189 N.J. at 329; see also N.J.S.A. 54:5-32. Indeed, a third-party purchaser of a tax sale certificate is aware of the likelihood that the property will be redeemed, will not proceed to foreclosure, and will not yield surplus equity. Cronecker, 189 N.J. at 316. If the property owner does not timely redeem, final judgment bars "the right of redemption, and . . . foreclose[s] all prior or subsequent . . . encumbrances." N.J.S.A. 54:5-104.64(a). The result to the tax sale certificate holder of a "final judgment of foreclosure under the [TSL] is to vest title to the property in fee simple." Phillipsburg, 380 N.J. Super. at 166; N.J.S.A. 54:5-87.

IV.

Recognizing the long established TSL framework, we turn to the United States Supreme Court's decision in Tyler to discern whether the TSL's authorization of the foreclosure of a property owner's equity by a tax sale certificate holder is a "classic taking in which the government directly

17

appropriates private property for its own use." 598 U.S. at 639 (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 324 (2002)). We acknowledge that "[g]enerally, [New Jersey] courts will adjudicate the constitutionality of legislation only if a constitutional determination is absolutely necessary to resolve a controversy between parties." Platkin v. Smith & Wesson Sales Co., 474 N.J. Super. 476, 491 (App. Div. 2023) (second alteration in original) (quoting Bell v. Township of Stafford, 110 N.J. 384, 389 (1988)). Indeed, "judicial power is to be exercised to strike down governmental action only at the instance of one who is himself harmed, or immediately threatened with harm, by the challenged conduct." Jackson v. Dep't of Corr., 335 N.J. Super. 227, 230 (App. Div. 2020). We are further guided by the principle that "important questions, particularly of constitutional dimensions, should not be dealt with in the abstract without a factual framework . . . that makes judicial intervention appropriate." Rybeck v. Rybeck, 150 N.J. Super. 151, 156 (App. Div. 1997). Although we conclude that the judge did not abuse his discretion in vacating final judgment under Rule 4:50-1(f), we address the application of Tyler, as "the underlying issue is one of substantial importance and is capable of repetition while evading review." Caput Mortuum, 366 N.J. Super. at 330.

The plaintiff in Tyler was a property owner in Hennepin County, Minnesota who ceased paying her condominium property taxes after she was placed in a senior living community in 2010. 598 U.S. at 634-35. She owed approximately $15,000 in unpaid real estate taxes, interest, and penalties which had accumulated over five years. Id. at 635. Pursuant to Minnesota's tax-forfeiture law, the taxing authority obtained a judgment against Tyler's property after her property taxes were past due, which transferred limited title to the State. Ibid. As a delinquent taxpayer, Tyler had "three years to redeem the property and regain title." Ibid. Following five years of unpaid taxes, Hennepin County seized and sold Tyler's condominium, which yielded $25,000 in surplus equity from a $40,000 sale. Ibid.

In reviewing Minnesota's tax-forfeiture law, the United States Supreme Court held Hennepin "confiscate[d] more property" from Tyler than the amount of the tax debt owed, therefore taking her equity in violation of the Fifth Amendment Takings Clause. Id. at 639. The United States Supreme Court recognized the majority of states "and the Federal Government require excess value to be returned to the taxpayer." Id. at 642. In collecting taxes owed, the United States Supreme Court held "the State may impose interest and late fees. It may also seize and sell property, including land, to recover the amount owed." Id. at 637-38.

19

In finding Minnesota's confiscation of equity violated the Takings Clause, the United States Supreme Court reasoned that the law provided "no opportunity for the taxpayer to recover the excess value[] once absolute title ha[d] transferred to the State." Id. at 644. The United States Supreme Court further acknowledged "[t]he principle that a government may not take more from a taxpayer than she [or he] owes can trace its origins at least as far back as . . . the Magna Carta." Id. at 639.

The United States Supreme Court concluded, "[t]he Takings Clause 'was designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Id. at 647 (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).

"The Takings Clause, applicable to [New Jersey] through the Fourteenth Amendment, provides that 'private property [shall not] be taken for public use, without just compensation.'" Id. at 637 (second alteration in original) (quoting U.S. Const. amend. V). The New Jersey Constitution provides even greater protection and states that "[p]rivate property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners." N.J. Const. art. 1, ¶ 20 (emphasis added); see

Mansoldo v. State, 187 N.J. 50, 58 (2006) ("[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." (quoting Pa. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922))).

Similar to Minnesota's tax-forfeiture law, New Jersey's TSL provides for the forfeiture of a property owner's remaining equity, above the lien amount owed, after final judgment in a tax sale foreclosure is entered for the tax sale certificate holder. Indeed, the TSL does not contemplate compensation to a property owner where the property value exceeds the amount owed to a taxing authority or third-party purchaser after final judgment. The TSL has permitted foreclosure of a property owner's equity and is thus a prohibited taking after Tyler.

Because Tyler does not address retroactivity to similar pending cases involving the forfeiture of equity above property tax amounts owed, we next consider whether retroactivity is accorded. When the United States Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review," even if such open cases predate or postdate the Supreme Court's decision. Harper v. Va. Dep't of Tax'n, 509 U.S. 86, 97 (1992) (creating a cohesive rule of law following and considering previous matters before the Court, including Chevron Oil Co. v. Huson, 404

21

U.S. 97 (1971), James B. Beam Distilling Co. v. Georgia, 501 U.S. 529 (1991), and Griffith v. Kentucky, 479 U.S. 314 (1987)).

Generally, "federal retroactivity turns on whether a new rule of law has been announced, coupled with an analysis of the status of the particular matter, that is, whether it is not yet final, is pending on direct appeal, or is being collaterally reviewed." State v. Adkins, 221 N.J. 300, 312 (2015) (quoting State v. Wessells, 209 N.J. 395, 411 (2011)). Thus, where a United States constitutional issue is decided, the new rule is applied "retroactively to cases that were in the pipeline when it was decided." See id. at 313 (finding a United States Supreme Court's holding on a Fourth Amendment issue "deserve[d] pipeline retroactive application").

In determining whether a decision is to be given retroactive effect, a court must consider whether: (1) a new principle of law has been established, (2) "the prior history of the rule in question" including its purpose and effect to determine whether retrospective application will further its operation, and (3) retroactive application of the rule would produce "substantial inequitable results" such as injustice or hardship. Coons, 96 N.J. at 427 (quoting Chevron, 404 U.S. at 106-07). Where full retroactivity "would impose an undue hardship on participants who justifiably relied on" a previous rule, but pure prospectivity "would unnecessarily inhibit" a constitutional right, pipeline

22

retroactivity is appropriate. R.M. v. Sup. Ct. of N.J., 185 N.J. 208, 230-31 (2005). We conclude pipeline retroactivity applies.

Unquestionably, Tyler establishes a new principle of law. Although the TSL promotes the worthy public interest goal of facilitating marketable titles to return properties to the paying tax rolls, there also exists the well-recognized public policy goal of protecting property owners' interests. The application of full retroactivity would be unworkable and create a substantial hardship for taxing authorities, as well as third-party purchasers. However, in balancing the public policy goals and interests, we do not discern the same hardship if pipeline retroactivity is applied. The retroactive pipeline application of the holding in Tyler to the TSL is mandated because the Court constitutionally recognized a property owner's interest in surplus equity.

Plaintiff's contention that third-party purchasers' reliance on the possibility of profiting from property owners' equity sufficiently supports cause for prospective application, is unpersuasive. Under the TSL, a tax sale certificate holder possesses only an inchoate interest in a property owner's equity, as title is not vested until final judgment. Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 416 (2018). The possibility of collecting equity only exists after judgment is entered and the right to redeem is extinguished. In considering retroactivity, our Supreme Court has

recognized that reliance on a statute is also a "critically important factor." Coons, 96 N.J. at 433. Tax sale certificate holders are aware at purchase that the right to equity cannot be relied upon because it is not perfected, but anticipate obtaining a high yield interest rate, as most properties are redeemed. Cronecker, 189 N.J. at 329. Therefore, we conclude pipeline retroactivity does not impose the argued inequity.

Recently, the United States Supreme Court confirmed, in a granted writ of certiorari, the retroactive application of Tyler in Fair, a Nebraska tax sale foreclosure matter which involved the confiscation of a Nebraska property owner's equity. 143 S. Ct. 2580, vacating Cont'l Res. v. Fair, 971 N.W.2d 313, 316-17 (N.E. 2022); see also Nieveen v. Tax 106, 143 S. Ct. 2580 (2023) (vacating and remanding a matter "to the Supreme Court of Nebraska for further consideration in light of" Tyler). The Nebraska Supreme Court had upheld a state tax sale foreclosure under Nebraska's tax foreclosure scheme, which closely mirrors New Jersey's TSL. Cont'l Res., 971 N.W.2d at 317. The Nebraska Supreme Court found a third-party purchaser's foreclosure of a property owner's equity was constitutional because the property owner had failed to demonstrate he had an absolute right to the difference between the assessed value of his property and his tax debt. Id. at 322-23. The United States Supreme Court vacated the judgment, in a June 5, 2023 order, and

A-3315-21

remanded the matter "to the Supreme Court of Nebraska for further consideration in light of" Tyler. Fair, 143 S. Ct. 2580. Thus, we consider the Court's action in Fair as additional support for our conclusion that Tyler applies retroactively.

Next, plaintiff's argument that the holding in Tyler does not apply to third-party tax sale certificate holders is also unavailing. Tyler provides the Fifth Amendment Takings Clause protects property owners from a taking of their property's equity without just compensation. See 598 U.S. at 643-45. That constitutional application stands whether the tax sale certificate holder is the taxing authority, or a third-party purchaser proceeding with an interest conveyed by the taxing authority. Additionally, the New Jersey Constitution provides property owners with greater protections than afforded under the United States Constitution. The New Jersey Constitution explicitly prohibits private corporations from taking private property. N.J. Const. art. I, ¶ 20.

Plaintiff's argument that lienholders' due process rights would be violated through the application of Tyler is also without merit. A third-party tax sale certificate holder purchases the certificate as "a lien on the premises" conveyed from "the lien interest of the taxing authority." In re Princeton, 218 N.J. at 67 (quoting Savage, 355 N.J. Super. at 436). The TSL provides the taxing authority's tax collector oversight to calculate and collect redemption

amounts, as the property's title is not conveyed—only the interest in the tax lien is conveyed.  Id. at 67-68.  Again, interest in the property is not vested until the tax sale certificate holder "succeeds to the lien interest of the taxing district."  Caput Mortuum, 366 N.J. Super. at 336.

The government cannot confer to a third-party a greater entitlement to property than that to which the public entity is entitled.  See, e.g., S. Camden Citizens in Action v. N.J. Dep't of Env't Prot., 254 F. Supp. 2d 486, 504 (D.N.J. 2003) ("[T]he [L]egislature or governmental agencies cannot constitutionally confer upon individuals or private corporations acting primarily for their own profit . . . any right to deprive persons of the lawful enjoyment of their property." (quoting Hyde v. Somerset Air Serv., Inc., 1 N.J. Super. 346, 349-50 (Ch. Div. 1949))).  Thus, the tax authority cannot confer greater rights to a third-party purchaser than those it retains.  Therefore, it is clear a third-party tax sale certificate holder's taking of property without just compensation, through a tax sale foreclosure, is not shielded from the application of the holding in Tyler as a violation of the Fifth Amendment Takings Clause and under the New Jersey Constitution.

In sum, the TSL statutory framework that provides for the forfeiture of a property owner's equity after final judgment violates the Fifth Amendment

26

Takings Clause in accordance with the decision in <u>Tyler</u>.[7]  We further conclude the new principle of law is accorded pipeline retroactivity to pending tax sale foreclosures involving a property owner's surplus equity, thus cause to vacate defendant's judgment is clear here.

V.

We now turn to the judge's order to vacate final judgment, which was entered prior to the decision in <u>Tyler</u>.  We review a motion under <u>Rule</u> 4:50-1 to vacate final judgment under an abuse of discretion standard.  <u>U.S. Bank Nat'l Ass'n v. Guillaume</u>, 209 N.J. 449, 467 (2012).  "[T]he 'functional approach'" to abuse of discretion "examines whether there are good reasons for an appellate court to defer to the particular decision."  <u>In re Fernandez</u>, 468 N.J. Super. 377, 391 (App. Div. 2021) (quoting <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002)).  Under <u>Rule</u> 4:50-1(f), relief from a judgment or order may    be obtained at    any    time    where    the "circumstances are exceptional and . . . enforcement of the order or judgment would be unjust, oppressive or inequitable."  Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 5.6.1 on <u>R.</u> 4:50-1 (2023).

---

[7] We note under N.J.S.A. 54:5-104.68, the constitutional clause, if any part of the TSL "shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not . . . invalidate the remainder thereof, but such adjudication shall be confined in its operation to the . . . part thereof directly invalidated."

"An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicitly departed from established policies, or rested on an impermissible basis.'" Savage v. Township of Neptune, 472 N.J. Super. 291, 313 (App. Div. 2022) (quoting Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458 (App. Div. 2018)).  When examining a trial judge's "exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

"[R]elief under [Rule 4:50-1(f)] is available only in 'exceptional circumstances'" as "its boundaries 'are as expansive as the need to achieve equity and justice.'" Hous. Auth. of Morristown v. Little, 135 N.J. 274, 290 (1994) (first quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984); and then quoting Palko v. Palko, 73 N.J. 395, 398 (1977)).  We recognize a trial judge in determining whether to vacate final judgment under Rule 4:50-1(f) is to consider all relevant facts presented in support of the alleged exceptional circumstances, weighed against the resulting detriment to the non-moving party. Rule 4:50-1 "is 'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should

28                                                          A-3315-21

have authority to avoid an unjust result in any given case.'" Guillaume, 209 N.J. at 467 (quoting Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)). A court may consider whether "the delay from the time of dismissal to the time of application for relief was substantial," and whether the delay caused potential prejudice to the responding party. Parker v. Marcus, 281 N.J. Super. 589, 593-94 (App. Div. 1995).

N.J.S.A. 54:5-87 prescribes a three-month strict time limitation to vacate final judgment, except for limited grounds, which must be read in conjunction with Rule 4:50-1. New Jersey's TSL "expressly contemplates that a court may grant relief from an otherwise final judgment of foreclosure, although it states that a court shall not 'entertain' an 'application . . . to reopen the judgment after three months . . . and then only upon the grounds of lack of jurisdiction or fraud.'" BV001, 467 N.J. Super. at 128 (quoting N.J.S.A. 54:5-87); see also N.J.S.A. 54:5-104.64(a). Here, defendant did not contravene N.J.S.A. 54:5-87 as the motion to vacate final judgment was filed less than two months after judgment was entered.

"Rule 4:50-1 does not accord tax sale foreclosure judgments greater respect than judgments obtained under other laws that are supported by equally strong public policy." BV001, 467 N.J. Super. at 129. Rather, as we stated in Bergen-Eastern Corp. v. Koss, "the issue is whether [the] defendant's conduct

in failing to respond sooner to the tax foreclosure proceedings should be forgiven." 178 N.J. Super. 42, 46 (App. Div. 1981).

Plaintiff's argument that the Legislature intended the TSL to divest an owner of equity at final judgment and bar redemption in favor of a lienholder securing marketable title is unpersuasive. The TSL framework provides the imperative not just for marketable title, but also that a property owner can redeem their property interest, and Rule 4:50-1(f) is available to a defendant demonstrating exceptional circumstances.

Our detailed review of the record leads us to conclude the judge did not abuse his discretion in granting defendant relief under Rule 4:50-1(f), as vacating final judgment is permitted for "any other reason justifying relief from the operation of the judgment." Irrespective of the precedent set forth in Tyler, the judge's well-reasoned and detailed oral decision finding exceptional circumstances was supported by sufficient evidence in the record. The judge correctly weighed that defendant: escrowed the required funds into his attorney's trust account, undisputedly had significant equity in the property, and certified he had compounded financial hardship from tenants' COVID-19-related rental arrears. Additionally, the judge noted defendant was seventy-five years old and owned the property for over twenty years.

We disagree with plaintiff's contention that the judge erred in failing to apply precedent established in Hemberger. While in Hemberger we found no equitable ground for vacating the foreclosure judgment, 388 N.J. Super. at 187, the facts are distinguishable here. There, "the certification of [the defendant] provide[d] evidence of the fact that [defendants] actively sought redemption funds, but were unable to obtain them." Id. at 188. The property was encumbered by additional mortgages, and the property owner contracted for sale with a third-party intervenor known to the court as a tax raider. Id. at 182-84. Pertinent to Hemberger, as noted by the judge, was that the third-party intervenor acquired an interest in the property for a price less than the property's value, and therefore the intervenor would benefit over both the property owner and the tax sale certificate holder. Id. at 184, 188. Thus, the judge correctly distinguished the present facts from Hemberger.

In his decision, the judge balanced the equities and weighed "the necessity of allowing the transfer of a clear title and the need to compel the payment of property taxes" against "the onerous impact of the procedure in circumstances where the party has remained in possession of the property and has substantial equity in it." Further, he balanced defendant's interest in saving the property against plaintiff's remuneration of monies owed on the tax sale certificates, including interest, counsel fees and costs incurred, as well as the

31

additional receipt of collected rental income. It was within the judge's sound discretion, based on the totality of facts, to permit redemption predicated on payment. The judge determined that plaintiff's "rights . . . under the law" were to yield to defendant's exceptional circumstances of receipt of substantial equity. In granting defendant's motion to vacate final judgment, which was obtained by default, the judge thoroughly balanced the facts presented, TSL statutory provisions, and equitable principles. The judge's decision to vacate final judgment was within the bounds of judicial discretion.

## VI.

In sum, we conclude the retroactive application of Tyler separately mandates grounds to vacate final judgment and the motion judge did not abuse his discretion in vacating final judgment under Rule 4:50-1(f) based on the substantial credible evidence presented.

To the extent we have not addressed any arguments raised by the parties, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION